**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **CCI Spectrum, LLC, as successor in interest**<br>**to CCI Spectrum, Inc.**<br>4527 Sunbeam Road<br>Jacksonville, Florida 32257 | )<br>)<br>)<br>) **CASE NO. 3:20-cv-1347**<br>) |
| **Plaintiff,** | ) **JUDGE** _____<br>) |
| **v.** | )<br>) |
| **Advanced Rehabilitation Technology, Ltd.,**<br>**LLC**<br>c/o Dustin Schlachter, Registered Agent<br>09547 State Route 34<br>Bryan, Ohio 43506 | ) **COMPLAINT FOR INJUNCTIVE**<br>) **RELIEF AND DAMAGES (WITH JURY**<br>) <u>**DEMAND ENDORSED HEREON)**</u><br>)<br>)<br>) |
| and | )<br>) |
| **OBIC LLC**<br>c/o HL Statutory Agent, Inc., Registered Agent<br>200 Public Square, Suite 280<br>Cleveland, Ohio 44114 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **Robert Klopfenstein**<br>209 South Common Lane<br>St. Augustine, Florida 32095 | )<br>)<br>)<br>) |
| and | )<br>) |
| **CTR Utility Rehab, LLC, also known as CTR**<br>**Coatings, Inc.**<br>c/o Incorp Services, Inc., Registered Agent<br>216 Centerview Drive, Suite 317<br>Brentwood, Tennessee 37027 | )<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

Plaintiff, CCI Spectrum, LLC, as successor in interest to CCI Spectrum, Inc. ("Plaintiff"), by and through counsel, brings this Complaint for Injunctive Relief and Damages against Defendants Advanced Rehabilitation Technology Ltd., LLC ("ART"), OBIC LLC ("OBIC"), Robert Klopfenstein ("Klopfenstein"), and CTR Utility Rehab, LLC, also known as CTR Coatings, Inc. ("CTR") (collectively "Defendants"), and alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a Florida limited liability company and has its principal place of business in Jacksonville, Florida.

2.      Defendant ART is an Ohio limited liability company and has its principal place of business in Bryan, Ohio.

3.      Defendant OBIC is also an Ohio limited liability company and has its principal place of business in Bryan, Ohio.  OBIC and ART share at least two owners (i.e., members of the respective limited liability companies).

4.      Defendant Klopfenstein is an individual residing in Florida who is the current Director of Technology for OBIC, working through and out of its Bryan, Ohio office.  His OBIC business card (attached as "**Exhibit A**") lists his address as Bryan, Ohio.

5.      Defendant CTR is a Tennessee limited liability company and has its principal place of business in Knoxville, Tennessee.  CTR and OBIC share at least one owner (i.e., members of the respective limited liability companies).

6.      This Court has original jurisdiction over this matter under, *inter alia*, 15 U.S.C. § 1125(a), 18 U.S.C. § 1836(b)(1), and 28 U.S.C. §§ 1331 & 1367(a).  Plaintiff brings both federal- and state-law claims against Defendants, and Plaintiffs' state-law claims are so related to the federal claims that they form part of the same case and controversy.

7.      This Court has personal jurisdiction over all Defendants.

(a)     This Court has personal jurisdiction over all Defendants ART and OBIC because their principal place of business is located in Bryan, Ohio.

(b)     This Court has personal jurisdiction over Defendant Klopfenstein because he works for OBIC through and out of its Bryan, Ohio office.

(c)     This Court has personal jurisdiction over CTR because CTR has worked with OBIC and Klopfenstein in Ohio, purports to be a distributor/licensee of OBIC, and has made false and misleading statements regarding OBIC's product.

8.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because both ART and OBIC have their principal places of business in Bryan, Ohio.  Bryan is in Williams County, located within the Northern District of Ohio's Western Division.  Klopfenstein works for OBIC through and out of its Bryan, Ohio office.  A substantial part of the events giving rise to this action occurred in Bryan, Ohio, and as explained above, this Court has personal jurisdiction over all Defendants.

## FACTS

### The "SpectraShield" Product, Plaintiff's Licensee Network, and ART and CTR

9.      Over the last 27 years, Plaintiff has developed proprietary products for rehabilitating fluid collection and flow systems, particularly wastewater manholes.  Once applied, Plaintiff's proprietary products enhance structural stability, seal and prevent water infiltration, and prevent corrosion.  Plaintiff's products also increase the lifetime of fluid collection and flow systems.

10.     Plaintiff owns and/or controls numerous patents relating to its business.

11.     Plaintiff sells certain products under the "SpectraShield" brand name.

12.     In addition, Plaintiff holds the following, non-exclusive list of closely-guarded trade secret information, including, but not limited to:

(a)     Formulations for the materials used in its products; formulations for its products; and the formulations, identity, and source of specific materials used in its products;

(b)     Research and development information on improving various characteristics of its products;

(c)     Proprietary pricing and cost information, supplier networks, and installation equipment and know-how; and

(d)     Corporate business and growth strategy.

Plaintiff holds this and other information in the strictest confidence and considers such information trade secrets.

13.     These trade secrets, combined with the methods disclosed in the patents, provide a manhole rehabilitation system which has been widely accepted throughout the United States.

14.     Plaintiff and its products have developed substantial goodwill in the industry, and Plaintiff is considered one of the premier providers of manhole rehabilitation services in the United States and other countries.

15.     As part of its business, Plaintiff has licensees throughout the United States who are provided exclusive and non-exclusive territories to promote, sell, and install Plaintiff's products.

16.     Plaintiff enters into License Agreements with each licensee setting forth the relationship between the parties.

17.     The License Agreements with Defendants ART and CTR (attached as "**Exhibit B**" and "**Exhibit C**", respectively) contain, *inter alia*, the following provisions:

2.3.     <u>Restrictions on Trade Secrets, Protected Products</u>.  Licensee acknowledges that certain protected products and formulations

required to make, use, and sell the licensed Products and practice the Methods under the License are made in accordance with trade secret formulations owned and controlled by CCI Spectrum (the "Protected Products"). Licensee agrees to acquire such Protected Products directly from CCI Spectrum under the terms and conditions in effect at the time or from a supplier approved by CCI Spectrum. Licensee further agrees to not reverse engineer such Protected Products or to attempt to find a substitute source for such Protected Products.

2.4     <u>Restrictions on Competition</u>.   During the term of this Agreement, Licensee will not provide any products or services that directly or indirectly compete with the Products and Methods to be sold or delivered under the license.

\*\*\*

6.1     <u>Protection of CCI Spectrum Confidential Information</u>. Licensee acknowledges that the Technical Information will contain information which is proprietary and confidential to CCI Spectrum. CCI Spectrum shall be responsible for identifying such information as Confidential Information. Licensee agrees to not disclose any Confidential Information to any person or party except those of its employees who need to know such in order to operate under this Agreement and only after receiving assurances from such employees that they understand the nature of the Confidential Information and that they will adhere to the conditions of confidentiality. As much of the Confidential Information contains trade secrets, there is not any expiration date for this provision and it shall survive this Agreement until such time as the Confidential Information is either: (1) released by CCI Spectrum, (2) enters the public domain without fault of Licensee, or (3) is legally obtained by Licensee from a third party without obligation of confidentiality.

\*\*\*

7.3     <u>Termination</u>. Licensee may terminate this agreement with 6 months written notice. Either Party may terminate this Agreement in the event the other Party gives notice of or is adjudicated bankrupt. In the event of termination, Licensee shall deliver all proprietary and confidential materials, including all Confidential Information, to CCI Spectrum upon notice of termination.

7.4     <u>Survival of Termination</u>.     Article 6 shall survive termination of this Agreement for any reason.

18.     Defendant ART was Plaintiff's exclusive licensee for the State of Michigan and for certain counties in the State of Ohio.  *See* "Exhibit B."  ART later added the Commonwealth of Pennsylvania to its exclusive territory.

19.     ART's contractual relationship with Plaintiff began in 2007 and ended on May 20, 2018.

20.     ART's President was, and upon information and belief still is, Dustin Schlachter. Plaintiff's contact with ART also included its head of product sales, Gary Mock.

21.     Defendant CTR was Plaintiff's exclusive licensee for the State of Tennessee.  *See* Exhibit C.  CTR later added the State of Arkansas to its exclusive territory.

22.     CTR's contractual relationship with Plaintiff began in 2010 and ended on October 30, 2018.

23.     CTR's President was, and upon information and belief still is, Charlotte Reed, and she is married to Troy Reed, who is a member of CTR and serves as CTR's Vice President.

### Robert Klopfenstein

24.     Klopfenstein was hired by Plaintiff as Chief Executive Officer ("CEO"), Secretary, and Treasurer on or about September 1, 2005.

25.     Upon hire, Klopfenstein entered into a Non-Disclosure Agreement (attached as "**Exhibit D**") providing:

> The undersigned, for employment, has been invited to examine, including, but not limited to, technical or financial information; production, process, equipment, application, trouble-shooting or manufacturing techniques, methods, or information; marketing, pricing, customer or distribution information, plans, strategies, tactics, plans and objectives; trade secrets; product formulation and raw material formulation; and know-how related to the aforementioned of [Plaintiff], which, in the opinion of [Plaintiff] contain confidential information and trade secrets integral to its operations.

[Plaintiff] will permit such examination only on the condition that the undersigned agrees to protect and maintain, the confidentiality of all such information, and [Plaintiff] in extending its invitation, relies on the undersigned's assurance to do so.

The undersigned is hereby notified of the confidential nature of the technical or financial information; production, process, equipment, application, trouble-shooting or manufacturing techniques, methods, or information; marketing, pricing, customer or distribution information, plans, strategies, tactics, plans and objectives; trade secrets; product formulation and raw material formulation; and know-how related to which the undersigned will be in contact, and does hereby agree for himself and his successors, principals and assigns, that any information emanated from his viewing and from such processes or ideas originated by [Plaintiff] shall not be utilized, or otherwise divulged to others, without the prior written consent of [Plaintiff].

26.    While CEO, Klopfenstein was in charge of, *inter alia*, managing Plaintiff's intellectual property.  This included, but was not limited to, keeping Plaintiff's confidential information and trade secrets confidential and ensuring Plaintiff's patents remained enforceable.

27.    On or about June 19, 2017, Plaintiff fired Klopfenstein.

28.    Following his firing, Klopfenstein and Plaintiff entered into a "Settlement Agreement" (attached as "**Exhibit E**").

29.    On information and belief, Klopfenstein executed this "Settlement Agreement" at CTR's premises in Tennessee, and a CTR employee notarized Klopfenstein's signature on this Agreement.

30.    Relevant to this lawsuit, Klopfenstein agreed, as part of the settlement, to the following sub-paragraph a. to paragraph 5. "Confidential Information":

Restrictive Period.  For a period of (1) year commencing on the Termination Date (the "Restrictive Period"), Klopfenstein shall not, directly or indirectly, disclose to any person or entity who is not authorized by the Companies or any Subsidiary or Affiliate to receive such information, or use or appropriate for his own benefit or for the benefit of any person or entity other than the Companies or any Subsidiary or Affiliate, any documents or other papers

relating to the Companies' business or the suppliers and customers of the Companies or any Subsidiary or Affiliate, including, without limitation, files, business relationships and accounts, pricing policies, customer lists, supplier and vendor lists, computer software and hardware, information relating to distribution of the Companies' products and services, or any other materials relating to the Companies' business or the suppliers and customers of the Companies or any Subsidiary or Affiliate, or any trade secrets or confidential information, including, without limitation, any business or operational methods, drawings, sketches, designs or product concepts, know-how, marketing plans or strategies, product development techniques or plans, business acquisition plans, financial or other performance data, personnel and other policies of the Companies or any Subsidiary or Affiliate, whether generated by Klopfenstein or by any other person; provided, however that the confidential information shall not include any information readily ascertainable from public information or information already published, or trade sources (other than as a direct or indirect result of unauthorized disclosure by Klopfenstein or any other person who is subject to a confidentiality agreement or duty to the Companies or any Subsidiary or Affiliate thereof).

**The Formation of OBIC**

31.     On or about February 6, 2018, OBIC filed its Articles of Organization with the Ohio Secretary of State.

32.     On information and belief, the owners of OBIC (and thus members of the limited liability company) are Dustin Schlachter and Gary Mock—both of whom are employees/officers of ART—and Troy Reed—who is an owner and Vice-President of CTR and is married to CTR's President Charlotte Reed.

33.     ART and CTR began aggressively marketing the "OBIC Armor" product to customers and potential customers.

34.     In fact, ART and CTR began promoting, representing, and selling for OBIC at a time when ART and CTR were contractually obligated to be exclusive to Plaintiff's products.

35.     OBIC was formed and began competing with Plaintiff while Klopfenstein was still in his one-year "Restrictive Period."

36.     In fact, Klopfenstein began his OBIC work even before OBIC itself was formed as a limited liability company, and Klopfenstein worked for OBIC during his "Restrictive Period." OBIC has retained Klopfenstein as its "Director of Technology."  *See* "Exhibit A."

37.     ART and CTR began promoting a new "OBIC Armor" product that they alleged was superior to Plaintiff's "SpectraShield" product.

38.     A copy of a May 2018 ART customer communication regarding the new "OBIC Armor" product is attached hereto as **Exhibit F**.

39.     A copy of a November 2018 CTR press release regarding the new "OBIC Armor" product is attached hereto as "**Exhibit G**."

40.     After learning of ART's and CTR's improper promotions of the competing "OBIC Armor" product, Plaintiff filed suit against Defendants in the State of Florida, Circuit Court for the Fourth Judicial Circuit, in and for Duval County, Case No. 2019-CA-003608 (the "Florida Litigation").

41.     Defendants have moved to dismiss the claims in the Florida Litigation and have argued that Florida courts lack personal jurisdiction over ART, CTR, and OBIC and that Plaintiff cannot proceed against Klopfenstein in Florida because ART and OBIC are "indispensable parties" to Plaintiff's claims against its former employee/officer Klopfenstein.

42.     The Florida court has Defendants' motions under submission but has not yet ruled on whether Plaintiff's claims may proceed in the Florida Litigation.

## Count One

## Defend Trade Secrets Act
### (Against All Defendants)

43.     Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 42 above by reference, as if fully set forth herein.

44.     Plaintiff's former CEO, Klopfenstein, was privy to Plaintiff's trade secrets and confidential and proprietary business information.  This includes, but is not limited to, the trade secret information described in Paragraph 12 above and its sub-parts.  This information constitutes "trade secrets" under 18 U.S.C. § 1839(3).

45.     The information referenced in Paragraph 12 above is not publicly available, nor may such information be compiled nor created by Plaintiff's competitors without a significant investment of time, effort, and money – if at all.

46.     Plaintiff takes reasonable steps to protect such information from disclosure to anyone other than authorized personnel and specifically required Klopfenstein to enter into a Non-Disclosure Agreement and later included a specific "Restrictive Period" to protect "Confidential Information" as part of Klopfenstein's "Settlement Agreement."

47.     The information referenced in Paragraph 12 above provides Plaintiff with a competitive advantage and its use or disclosure would provide Plaintiff's competitors with an unfair economic advantage.

48.     The trade secrets and confidential and proprietary business information described above are fundamental to Plaintiff's success, and keeping such information confidential is essential to maintaining Plaintiff's competitive advantage.

49.     Without Plaintiff's permission, through Defendants' concerted actions, Defendants have improperly obtained Plaintiff's trade secrets and proprietary and confidential information,

have disclosed such information, directly and indirectly, and have used Plaintiff's trade secrets and proprietary and confidential information to create OBIC and its product line and otherwise benefit Defendants.

50.     Defendants' willful misappropriation, use, and disclosure of Plaintiff's trade secrets and confidential and proprietary business information has provided, and will continue to provide, Defendants with an improper and unfair commercial advantage.

51.     Plaintiff has used its trade secrets in interstate and foreign commerce, and Defendants have misappropriated Plaintiff's trade secrets for use in interstate commerce.

52.     As a direct and proximate result of Defendants' misappropriation, use, and disclosure of Plaintiff's trade secrets, Defendants have caused, and will continued to cause, irreparable damage to Plaintiff and unjust enrichment to Defendants.

53.     Under 18 U.S.C. § 1836(b)(3)(A), Plaintiff is entitled to injunctive relief.

54.     Under 18 U.S.C. § 1836(b)(3)(B), Plaintiff also seeks damages based on its actual losses and based on Defendant's unjust enrichment or, in lieu of such damages, a reasonable royalty.

55.     Under 18 U.S.C. § 1836(b)(3)(C), Plaintiff is entitled to exemplary damages for Defendants' willful and malicious misappropriation of its trade secrets.

56.     Plaintiff also is entitled to its attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) for Defendants' bad faith conduct in misappropriating Plaintiff's trade secrets.

### Count Two

### Ohio's Uniform Trade Secrets Act
### (Against All Defendants)

57.     Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 56 above by reference, as if fully set forth herein.

58.     Plaintiff's former CEO, Klopfenstein, was privy to Plaintiff's trade secrets and confidential and proprietary business information.  This includes, but is not limited to, the trade secret information described in Paragraph 12 above and its sub-parts.  This information constitutes "trade secrets" under the Uniform Trade Secrets Act, R.C. § 1333.61(D).

59.     The information referenced in Paragraph 12 above, is not publicly available, nor may such information be compiled nor created by Plaintiff's competitors without a significant investment of time, effort, and money – if at all.

60.     Plaintiff takes reasonable steps to protect such information from disclosure to anyone other than authorized personnel and specifically required Klopfenstein to enter into a Non-Disclosure Agreement and later included a specific "Restrictive Period" to protect "Confidential Information" as part of Klopfenstein's "Settlement Agreement."

61.     The information referenced in Paragraph 12 above provides Plaintiff with a competitive advantage and its use or disclosure would provide Plaintiff's competitors with an unfair economic advantage.

62.     The trade secrets and confidential and proprietary business information described above are fundamental to Plaintiff's success, and keeping such information confidential is essential to maintaining Plaintiff's competitive advantage.

63.     Without Plaintiff's permission, through Defendants' concerted actions, Defendants have improperly obtained Plaintiff's trade secrets and proprietary and confidential information,

have disclosed such information, directly and indirectly, and have used Plaintiff's trade secrets and proprietary and confidential information to create OBIC and its product line and otherwise benefit Defendants.

64.     Defendants' willful misappropriation, use, and disclosure of Plaintiff's trade secrets and confidential and proprietary business information has provided, and will continue to provide, Defendants with an improper and unfair commercial advantage.

65.     As a direct and proximate result of Defendants' misappropriation, use, and disclosure of Plaintiff's trade secrets, Defendants have caused, and will continued to cause, irreparable damage to Plaintiff and unjust enrichment to Defendants.

66.     Under R.C. §1333.62, Plaintiff is entitled to injunctive relief.

67.     Under R.C. §1333.63, Plaintiff also seeks damages based on its actual losses and based on Defendant's unjust enrichment or, in lieu of such damages, a reasonable royalty.

68.     Under R.C. §1333.63, Plaintiff is entitled to exemplary damages for Defendants' willful and malicious misappropriation of its trade secrets.

69.     Plaintiff also is entitled to its attorneys' fees under R.C. § 1333.64 for Defendants' bad faith conduct in misappropriating Plaintiff's trade secrets.

70.     Tennessee, where CTR is located, and Florida, where Klopfenstein resides, have also adopted versions of the Uniform Trade Secrets Act.  *See* Tenn. Code Ann. § 47-25-1701, *et seq.*; Fla. Stat. § 688.001, *et seq.*  In the event that one or all Defendants were to deny that Ohio's Uniform Trade Practices Act applies to them, Plaintiff seeks, in the alternative, relief under the applicable Tennessee and/or Florida statutes, as determined by this Court in accordance with applicable choice-of-law principles.

## Count Three

## Lanham Act
## (Against All Defendants)

71.     Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 70 above by reference, as if fully set forth herein.

72.     Defendants have made false and misleading statements about the "OBIC Armor" product and have disparaged Plaintiff's "SpectraShield" product.

73.     For example, Defendants have stated that the "OBIC Armor" product "is the same technology as SpectraShield, but better."

74.     Defendants have falsely and misleadingly stated that there have been changes in the "manufacture" of Plaintiff's "SpectraShield" product and "changes in the manufacturer."

75.     Defendants have represented that the "OBIC Armor" product has "higher tear strength, higher abrasion resistance, higher elongation, higher tensile strength, [and] better adhesion" than Plaintiff's "SpectraShield" product.

76.     Defendants have also represented that the "OBIC Armor" product is "more robust" than Plaintiff's "SpectraShield" product.

77.     Defendants have likewise articulated false concerns about Plaintiff's "quality of materials and acumen."

78.     Defendant ART has falsely stated that it was the "largest volume installer" of Plaintiff's "SpectraShield" product.

79.     Defendants ART and CTR have also made misleading statements to customers and potential customers about Plaintiff's changes to the warranty on the "SpectraShield" product, when those warranty changes have had no impact whatsoever on the customers themselves.

80.     Defendants have made these and other intentionally misleading statements and false descriptions of facts in an effort to divert sales from Plaintiff to Defendants, have misrepresented the nature, characteristics, and qualities of Plaintiff's and Defendants' respective goods and services, creating ill-will between Plaintiff and its customers.

81.     These false and misleading statements and misrepresentations have deceived or have tended to deceive a substantial portion of the audience for Defendants' statements.

82.     These false and misleading statements and misrepresentations are material and likely to influence the customer's decisions on whether to purchase Plaintiff's "SpectraShield" product or Defendants' competing "OBIC Armor" product.

83.     Defendants have directed advertisements and promotional materials containing these false and misleading statements and misrepresentations to customers and potential customers as part of interstate commerce.

84.     Defendants' false and misleading statements and misrepresentations have caused and are likely to cause injury to Plaintiff.

85.     Defendant's conduct violates 15 U.S.C. § 1125(a)(1).

86.     Under 15 U.S.C. § 1116(a), Plaintiff is entitled to injunctive relief.

87.     Under 15 U.S.C. § 1117(a), Plaintiff also seeks recovery of Defendants' profits, Plaintiff's damages, and the costs of this action, including trebling of damages as allowed for by statute.

88.     Plaintiff also is entitled to its attorneys' fees under 15 U.S.C. § 1117(a) in this exceptional case.

**Count Four**

**Ohio Deceptive Trade Practices Act**
**(Against All Defendants)**

89.     Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 88 above by reference, as if fully set forth herein.

90.     Defendants have made false and misleading statements about the "OBIC Armor" product and have disparaged Plaintiff's "SpectraShield" product.

91.     For example, Defendants have stated that the "OBIC Armor" product "is the same technology as SpectraShield, but better."

92.     Defendants have falsely and misleadingly stated that there have been changes in the "manufacture" of Plaintiff's "SpectraShield" product and "changes in the manufacturer."

93.     Defendants have represented that the "OBIC Armor" product has "higher tear strength, higher abrasion resistance, higher elongation, higher tensile strength, [and] better adhesion" than Plaintiff's "SpectraShield" product.

94.     Defendants have also represented that the "OBIC Armor" product is "more robust" than Plaintiff's "SpectraShield" product.

95.     Defendants have likewise articulated false concerns about Plaintiff's "quality of materials and acumen."

96.     Defendant ART has falsely stated that it was the "largest volume installer" of Plaintiff's "SpectraShield" product.

97.     Defendants ART and CTR have also made misleading statements to customers and potential customers about Plaintiff's changes to the warranty on the "SpectraShield" product, when those warranty changes have had no impact whatsoever on the customers themselves.

98. Defendants have made these and other intentionally misleading statements and false descriptions of facts in an effort to divert sales from Plaintiff to Defendants, have misrepresented the nature, characteristics, and qualities of Plaintiff's and Defendants' respective goods and services, creating ill-will between Plaintiff and its customers.

99. These false and misleading statements and misrepresentations have deceived or have tended to deceive a substantial portion of the audience for Defendants' statements.

100. These false and misleading statements and misrepresentations are material and likely to influence the customer's decisions on whether to purchase Plaintiff's "SpectraShield" product or Defendants' competing "OBIC Armor" product.

101. Defendants' false and misleading statements and misrepresentations have caused and are likely to cause injury to Plaintiff.

102. Under R.C. § 4165.03(A)(1), Plaintiff is entitled to injunctive relief.

103. Under R.C. § 4165.03(A)(2), Plaintiff also seeks damages based on its actual losses occasioned by Defendants' improper conduct.

104. Under R.C. § 4165.03(B), Plaintiff is entitled to recovery of its attorneys' fees because Defendants have willfully engaged in prohibited practices.

105. Tennessee, where CTR is located, and Florida, where Klopfenstein resides, have enacted statutes similar to the Ohio Deceptive Trade Practices Act. *See* Tenn. Code Ann. § 47-18-101, *et seq.*; Fla. Stat. § 501.201, *et seq.* In the event that one or all Defendants were to deny that the Ohio Deceptive Trade Practices Act applies to them, Plaintiff seeks, in the alternative, relief under the applicable Tennessee and/or Florida statutes, as determined by this Court in accordance with applicable choice-of-law principles.

## Count Five

## Breach of Fiduciary Duty
## (Against Klopfenstein)

106.     Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 105 above by reference, as if fully set forth herein.

107.     Klopfenstein, as the CEO of Plaintiff, owed fiduciary duties to Plaintiff and a duty to comply with the general standards as set forth in Florida statutes and case law in discharging his duties.

108.     Klopfenstein has alleged, as part of the Florida Litigation, that his breaches of his fiduciary duties owed to a Florida limited liability company cannot be litigated in Florida and that ART and OBIC are "indispensable parties" to Plaintiff's breach-of-fiduciary claims against him.

109.     Pursuant to Florida law, Klopfenstein was required to discharge his duties as CEO:

      (a)     In good faith;

      (b)     With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

      (c)     In a manner he reasonably believes to be in the best interests of Plaintiff.

110.     Klopfenstein has intentionally, willfully, and maliciously breached his fiduciary duty to Plaintiff, including his duty of loyalty, and failed to carry out such duties in compliance with law, by, among other actions:

      (a)     Providing Plaintiff's trade secrets and confidential and proprietary information to ART, CTR, and OBIC; and

      (b)     Using Plaintiff's trade secret and confidential information to conspire with ART, OBIC, and CTR to develop products with another company, OBIC, while employed as Plaintiff's CEO.

111.    Klopfenstein did not act in good faith when he undertook each of the above stated acts.

112.    Klopfenstein did not use ordinary care when he undertook each of the above stated acts.

113.    Klopfenstein did not have a reasonable belief he was acting in the bests interests of Plaintiff when he undertook each of the above stated acts.

114.    As a direct and proximate result of Klopfenstein's breach of his fiduciary duty, Plaintiff has suffered and will suffer irreparable harm and irreparable injury and damages.

115.    This Court should award in favor of Plaintiff and against Defendants all compensatory and incidental damages caused by his breach of his fiduciary duty, including the duty of loyalty, including without limitation disgorgement of all compensation or other profits received by Klopfenstein during the time of such breach.

116.    The Court should also award punitive damages in favor of Plaintiff and against Klopfenstein due to his intentional, malicious, reckless, and/or fraudulent breach of his fiduciary duty.

**Count Six**

**Civil Conspiracy**
**(Against All Defendants)**

117.    Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 116 above by reference, as if fully set forth herein.

118.    ART and OBIC, through Schlachter and Mock, were aware that Klopfenstein owed fiduciary duties to Plaintiff as CEO.   ART and OBIC also knew Klopfenstein possessed confidential and trade secret information of Plaintiff.

119.    Similarly, CTR, through Troy Reed, was aware Klopfenstein owed fiduciary duties to Plaintiff as CEO.   CTR also knew Klopfenstein possessed confidential and trade secret information of Plaintiff.

120.    ART, CTR, OBIC, and Klopfenstein acted maliciously in forming a combination to cause injury to Plaintiff through the unlawful acts of misappropriating Plaintiff's trade secrets, making false and misleading statements about Plaintiff's product and OBIC's product and through Klopfenstein's unlawful breach of his fidicuary duty.

121.    The commission of each of the actions alleged above was pursuant to a common design among the Defendants to accomplish by concerted action and unlawful purpose or a lawful purpose by unlawful means.

122.    As set forth herein, Defendants each have committed one or more overt acts in furtherance of the conspiracy.

123.    Defendants' actions have directly caused injury and damage to Plaintiff.

124.    Defendants should be adjudged jointly and severally for all damages for which any individual Defendant is adjudged liable.

125.    Defendants acted fraudulently, intentionally, recklessly, and/or maliciously, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial.

## Count Seven

### Breach of Contract
### (Against ART and CTR)

126.    Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 125 above by reference, as if fully set forth herein.

127.    ART entered into an Exclusive License Agreement with Plaintiff on or about October 1, 2007, which was in effect until its termination on May 20, 2018.  *See* "Exhibit B."

128.    CTR entered into an Exclusive License Agreement with Plaintiff on June 14, 2010, which was in effect until its termination on October 30, 2018.  *See* "Exhibit C."

129.    ART and CTR breached multiple provisions of their Exclusive License Agreements.

130.    As a proximate result, Plaintiff has been damaged.


### Count Eight

### Tortious Interference with Contract
### (Against OBIC and Klopfenstein)

131.    Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 130 above by reference, as if fully set forth herein.

132.    ART entered into an Exclusive License Agreement with Plaintiff on or about October 1, 2007, which was in effect until its termination on May 20, 2018.  *See* "Exhibit B."

133.    CTR entered into an Exclusive License Agreement with Plaintiff on June 14, 2010, which was in effect until its termination on October 30, 2018.  *See* "Exhibit C."

134.    Based on his former service as Plaintiff's CEO, Klopfenstein was aware of these Exclusive License Agreements.

135.    Likewise, OBIC—through its owners Dustin Schlachter, Gary Mock, and Troy Reed—where aware of ART's and CTR's respective Exclusive License Agreements with Plaintiff.

136.    OBIC and Klopfenstein procured ART and CTR to breach their respective Exclusive License Agreements with Plaintiff.

137.    As a proximate result, Plaintiff has been damaged.

## Count Nine

### Breach Of Contract
### (Against Klopfenstein)

138.    Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 137 above by reference, as if fully set forth herein.

139.    Klopfenstein entered into a Non-Disclosure Agreement with Plaintiff on September 1, 2005.  *See* "Exhibit D."

140.    Klopfenstein also entered into a Settlement Agreement in August 2017 after Plaintiff had fired him.  *See* "Exhibit E."

141.    The Settlement Agreement provides that the "prevailing party" may recover attorneys' fees in an action arising under the Settlement Agreement.  These attorneys' fees provisions were specifically negotiated before between Plaintiff and Klopfenstein.

142.    Klopfenstein breached both the Non-Disclosure Agreement and the Settlement Agreement.

143.    Said breaches have proximately caused injury and damages to Plaintiff.

## Count Ten

### Tortious Interference with Contract
### (Against ART, CTR, and OBIC)

144.    Plaintiff incorporates the allegations contained in Paragraph Nos. 1 through 143 above by reference, as if fully set forth herein.

145.    Klopfenstein entered into a Non-Disclosure Agreement with Plaintiff on September 1, 2005.  *See* "Exhibit D."

146.    Klopfenstein also entered into a Settlement Agreement in August 2017 after Plaintiff had fired him.  *See* "Exhibit E."

147.    OBIC has retained Klopfenstein as its "Director of Technology" and thus is aware of Klopfenstein's Non-Disclosure Agreement and Settlement Agreement.

148.    Likewise, both ART—through its employees/officers Dustin Schlachter and Gary Mock—and CTR—through its employee/officer Troy Reed—where aware of Klopfenstein's Non-Disclosure Agreement and his Settlement Agreement.

149.    ART, CTR, and OBIC intentionally procured Klopfenstein to breach his Non-Disclosure Agreement and his Settlement Agreement.

150.    As a proximate result, Plaintiff has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)    Issue preliminary and permanent injunctions, enjoining and restraining Defendants from the present and future use of Plaintiff's proprietary and confidential information and trade secrets;

(b)    Enter an Order requiring disgorgement of profits from OBIC from its creation to present;

(c)    Enter an Order requiring OBIC's dissolution;

(d)    Enter an Order awarding Plaintiff's statutory damages, including exemplary damages (double or treble, depending on the statute), and attorneys' fees, as provided for by, *inter alia*, 15 U.S.C. § 1117(a), 18 U.S.C. § 1836(b)(3), & R.C. §§  1336.63, 1333.64, & 4165.03;

(e)    Enter an Order awarding Plaintiff's attorney fees in accordance with the provisions of the "Settlement Agreement" attached as "Exhibit E."

(f)     Apply applicable choice of law principles to Plaintiff's claims;

(g)     Enter judgment against Defendants, jointly and severally, for monetary damages, including all damages and an accounting for all profits realized by Defendants as a result of their tortious misconduct, breaches of contract, and breach of fiduciary duty, disgorgement of all profits or other compensation received by Defendants, for pre-judgment interest, for punitive damages because of Defendants' intentional, malicious, fraudulent, and reckless misconduct, and for recovery of costs incurred by Plaintiff; and/or

(h)     Grant such other and further relief in favor of Plaintiff against Defendants as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands trial by jury of every claim so triable.  *See* Fed. R. Civ. P. 38.

*s/ Devin C. Dolive*
Devin C. Dolive
Ohio Registration No. 0075585

Respectfully submitted, this the 19th day of June, 2020.

*s/ Devin C. Dolive*
Devin C. Dolive
Ohio Registration No. 0075585
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
ddolive@burr.com

Attorney for Plaintiff
CCI Spectrum, LLC